JEHAN'AD MARTINEZ
BLAIR STERLING JOHNSON & MARTINEZ, P.C.
1411 Pale San Vitores Road, Suite 303
Tamuning, Guam 96913
Telephone: (671) 477-7857
Facsimile: (671) 472-4290

*Attorneys for Defendant Melvin John Salas Naputi*

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. CR23-00001 |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| MELVIN JOHN SALAS NAPUTI, | |
| Defendant. | |

**COMES NOW** Defendant **MELVIN JOHN SALAS NAPUTI** (hereinafter "Mr. Naputi"), through his counsel, Jehan'Ad G. Martinez, and herein submits this sentencing memorandum. For the reasons stated below, Mr. Naputi respectfully requests that the Court sentence him to a term of 235 months (or 19 years and 7 months).

1. **FACTS AND POSTURE**

On June 28, 2023, Mr. Naputi agreed to plead guilty to Counts 3 and 5 of the Superseding Indictment. ECF No. 77. The Superseding Indictment charged Mr. Naputi with Count 3: Attempted Possession with Intent to Distribute Fifty (50) or More Grams of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(l)(A)(viii) and 18 U.S.C. § 2 and Count 5: Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). ECF No. 14.

- 1 -

The Government adopted the USPO's Draft Presentence Investigation Report ("PIR") (ECF No. 79) on September 1, 2023. ECF No. 81. On September 5, 2023, Mr. Naputi filed a Response to Presentence Investigative Report requesting a downward variance. ECF No. 83. The Government filed its response on September 11, 2023. ECF No. 84.

On December 8, 2023, the Government filed its sentencing memorandum, recommending the Court to sentence Mr. Naputi to a term of imprisonment of thirty (30) years or three hundred and sixty (360) months. ECF No. 91.

### 2. DOWNWARD VARIANCE

18 U.S.C. § 3553(a) mandates that a court "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals. As explained in detail in Mr. Naputi's Response to Presentence Investigation Report, ECF. No. 83, a sentencing judge may depart from the Sentencing Guidelines if they disagree with the Guidelines on policy grounds. See *Spears v. United States*, 555 U.S. 261, 263–67 (2009) (per curiam). This authority "is at its greatest when the offense Guideline at issue is not the product of the [Sentencing] Commission's empirical analysis and technical expertise." *United States v. Diaz*, 2013 WL 322243, at *3 (E.D.N.Y. Jan. 28, 2013). Since the methamphetamine guidelines were promulgated, "an emerging chorus of district courts around the country" have concluded that "the Sentencing Commission deviated from the empirical approach when setting the Guideline ranges for drug offenses." *United States v. Moreno*, 583 F. Supp. 3d 739, 743 (W.D. Va. 2019). They have concluded as such because the guidelines (1) arbitrarily punishes methamphetamines offenses disproportionately compared to other drug offenses, and (2) relies on an outdated premise that the purity of methamphetamine is somehow tied to culpability. See ECF No. 83, pp. 2-6. In accordance with these findings, sentencing judges have routinely granted downward variances from the methamphetamine guidelines. See ECF No. 83, pp. 6-7.

- 2 -

Case 1:23-cr-00001  Document 92  Filed 01/22/24  Page 2 of 7

Sentencing judges across the district courts have adopted at least four different methodologies to determine the appropriate level of downward variance. One solution, as adopted by the District Court of Idaho, is to calculate two guideline ranges, one assuming the confiscated methamphetamine substance to be pure and the other assuming the substance to be a mixture, "then determining, based upon all of the circumstances, what constitutes a reasonable sentence under the facts of the case." *United States v. Hoover*, 2018 WL 5924500, at *4 (D. Idaho Nov. 13, 2018).

A second approach, as advocated by Judge Gleeson of the Easter District of New York, is simply to reduce the sentencing ranges by a third. *United States v. Diaz*, 2013 WL 322243, at *9 (E.D.N.Y. Jan. 28, 2013)

A third approach, as adopted in *United States v. Saldana*, is to "sentenc[e] all cases by considering all methamphetamine quantities to be methamphetamine mixtures." *United States v. Saldana*, Case No. 1:17-cr-271-1, 7 (W.D. Mich. Jul. 3, 2018).

A fourth approach, as suggested but not actually adopted in *United States v. Hayes*, is to calculate the recommended range based on the original 1987 Guidelines, which equated 1 gram of methamphetamine to 2 grams of cocaine and did not distinguish between pure methamphetamine and methamphetamine mixtures. 948 F. Supp. 2d 1009, 1023 (N.D. Iowa 2013).

In its Draft Presentence Investigation Report, the USPO adjudged Mr. Naputi to have possessed 68,849.8 kilograms worth of controlled substances in converted drug weight. ECF No. 79, ¶130. The figure was derived based on Mr. Naputi's possession of approximately 3,442.49 grams of "pure" methamphetamines or ice. *Id.* The resulting offense level was 36. *Id.* at ¶131. After applying several upward and downward departures based on specific offense characteristics and acceptance of responsibility, the USPO recommended a total offense level of 37. *Id.* at ¶147. Based on the total offense level of 37 and Mr. Naputi's criminal history category of VI, the Sentencing Table recommends a sentencing range of 360 to life. *Id.* at ¶198.

Should this Court disagree with the methamphetamine guidelines on policy grounds, Mr. Naputi respectfully requests the court to grant a downward variance based on any of the four methodologies cites in the foregoing paragraphs. Regardless of which method the Court chooses to adopt, the appropriate sentence comes out to approximately 235 months to 293 months.

If, as in the first and third methods, the Court treats all 3,442.49 grams of "pure" methamphetamine or ice as "mixtures," the resulting converted drug weight would be 6,884.98 kilograms. USSG §2D1.1, Commentary (n. 8(D))[1]. This would put Mr. Naputi's base offense level at Level 32. USSG §2D1.1(c) ("At least 3,000kg but less than 10,000kg of Converted Drug Weight."). Applying the same upward and downward departures suggested by the PIR, the total offense level would be 33. Based on the total offense level of 33 and Mr. Naputi's criminal history category of VI, the Sentencing Table would recommend a sentencing range of 235 to 293 months.

If, as in the second method, the Court simply chooses to reduce the recommended sentence range of 360 to life by a third, the lower end of the sentencing range would be reduced to 240 months.

If, as in the fourth method, the Court adopts the 1987 Guidelines, the base offense level would be 32. See 1987 Sentencing Guidelines, Drug Quantity Table ("5-14.9 KG Cocaine or equivalent Schedule I or II Stimulants" equates to a base offense level of 32 and "1gm of Methamphetamine = 2.0 gm of cocaine…") (3,442.49 grams of methamphetamine would come out to 6,884.98 grams, or 6.88 kilograms, of cocaine). Applying the same upward and downward departures suggested by the PIR, the total offense level would be 33. Based on the total offense level of 33 and Mr. Naputi's criminal history category of VI, the Sentencing Table would recommend a sentencing range of 235 to 293 months.

---

[1] The Guidelines convert 1 gram of a methamphetamine mixture to 2 kilograms of converted drug weight, and 1 gram of actual methamphetamine or "ice" to 20 kilograms of converted drug weight.

Based on application of the § 3553 sentencing factors (see below), Mr. Naputi requests a sentence in the lower end of the 235-to-293-month range.

3. **MR. NAPUTI'S HISTORY AND CHARACTERISTICS, 18 USC § 3553(A)(1).**

In imposing a sentence that is "sufficient, but not greater than necessary," the court should look to the statutory factors listed under Section 3553. One such factor is the defendant's "history and characteristics." 18 USC § 3553(a)(1). Mr. Naputi is a 51-year-old male who has managed to have a positive impact on his family and friends despite his troubled upbringing. Mr. Naputi is the oldest of three children. When he was 17 years old, his 14-year-old brother committed suicide. ECF No. 79, ¶164. Mr. Naputi and his sister were traumatized when they discovered their brother hanging in their bedroom. ECF No. 79, ¶168. Mr. Naputi has admitted that he has never recovered from the death of his brother. *Id*. Mr, Naputi has also admitted that during his childhood, he experienced physical abuse from his stepfather. ECF No. 79, ¶171. Mr. Naputi would benefit from mental health counseling as he has difficulty expressing his emotions and worries extensively. *Id*. Once he receives the appropriate treatment and serves time for the crimes he has committed, Mr, Naputi will be able to return to his community as a law-abiding citizen.

Mr. Naputi is married to Mrs. Roxanne Naputi, with whom he shares a "blended family of 8 children, with one grandson." ECF. No. 85-1, p. 1. Mrs., Naputi knows Mr. Naputi to be a "good person, caring and extremely considerate when it comes to…[their] children." *Id*. Mr. Naputi's niece, Ms. Flora Asanaoma, characterizes Mr. Naputi as a "good man who made poor decisions," a "terrific father figure," and someone who "always made sure of [her] safety, even when he was in and out of jail." *Id*. at p. 2. Four other friends and family members of Mr. Naputi have submitted letters attesting to his good character. See ECF. No. 85-1, pp. 3-6.

In light of the foregoing, Mr. Naputi is entitled to a sentence in the lower range of his requested sentencing range of 235 to 293 months.

- 5 -

**4. NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE, 18 USC § 3553(A)(2)(A).**

The Government contends that a sentence of thirty years "will impress on the Defendant the seriousness of his offenses and promote significant respect for the law." ECF No. 91, pp. 6-7. Mr. Naputi's proposed sentence of 19 years and 7 months is commensurate with the gravity of the crimes he has committed. The proposed sentence exceeds the mandatory minimum and is sufficiently long as to impress upon Mr. Naputi the seriousness of the crimes he committed. As explained ad nauseam in Mr. Naputi's Response to Presentence Investigation Report and Section 2 of this Memorandum, strict adherence to the methamphetamine guidelines, which would impose an additional 10 years of incarceration to Mr. Naputi's proposed sentence, is not grounded in sound policy. In addition, Mr, Naputi has already demonstrated his respect for the law by pleading guilty to the charges brought by the Government and accepting responsibility for his past conduct.

**5. ANY PERTINENT POLICY STATEMENTS ISSUED BY THE SENTENCING COMMISSION, 18 USC § 3553(A)(5).**

The Government admits that "there are no pertinent policy statements" issued by the Sentencing Commission with respect to the methamphetamine guidelines. ECF No. 91, pp. 6-7. This is precisely why Mr. Naputi is seeking a downward variance from the sentencing range recommended by the methamphetamine guidelines. The lack of any pertinent policy statement by the Commission underscores the fact that the methamphetamine guidelines were not promulgated based on sound public policy. As noted above, "an emerging chorus of district courts around the country" have concluded that "the Sentencing Commission deviated from the empirical approach when setting the Guideline ranges for drug offenses." *United States v. Moreno*, 583 F. Supp. 3d 739, 743 (W.D. Va. 2019); see also Bernard E. Harcourt, From The Ne'er–Do–Well To The Criminal History Category: The Refinement Of The Actuarial Model In Criminal Law, 66 L. & CONTEMP. PROBS. 99, 123–25 (2003) ("[The Commission's] actual methodology is somewhat

mysterious; the methodological appendix to the sentencing guidelines does not meet social science standards and seems almost deliberately intended to obfuscate discussion of the methods used.").

   6.   **THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT, 18 USC § 3553(6).**

Mr. Naputi's proposed sentence would not create disparities among similarly situated defendants. As explained in paged 6 to 7 of Mr. Naputi's Response to Presentence Investigation Report, district judges across the country routinely grant downward variances for methamphetamine offenses based on their disagreement with the policy underlying the methamphetamine guidelines. ECF No., 83.

## CONCLUSION

If the Court agrees with Mr. Naputi and virtually every other district court in the country that the methamphetamine guidelines is not a product of the Commission's usual empirical approach to promulgating sentencing guidelines, Mr. Naputi is entitled to a sentence range of 235 to 293 months. Mr. Naputi respectfully requests the Court to impose a sentence at the bottom end of that range of 235 months in light of the mitigating factors described in this memorandum.

**RESPECTFULLY SUBMITTED** this 22nd day of January, 2024.

**BLAIR STERLING JOHNSON & MARTINEZ**
A PROFESSIONAL CORPORATION'



By:_____
**JEHAN'AD MARTINEZ**
*Attorney for Defendant Melvin John Salas Naputi*

A56\10716-71
Https://netorg941835-my.sharepoint.com/personal/rmarsjohnson_bsjmlaw_com/Documents/G Drive/PLD/JGM/2024.01.22 - Defendant's Sentencing Memorandum re USA v M Naputi CR23-000001.docx